835 F.2d 880
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jimmie Lee JOHNSON, Defendant-Appellant.
 No. 87-1237.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1987.
 
 Before ENGEL and CORNELIA G. KENNEDY, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Jimmie Lee Johnson appeals a judgment entered on a jury verdict of guilty in the United States District Court for the Eastern District of Michigan.
 
 
 2
 On July 16, 1986 a grand jury delivered the following five-count indictment against Johnson:
 
 
 3
 (1) Conspiracy to distribute schedule II narcotics (demerol & dilaudid) in violation of 21 U.S.C. Sec. 841(a)(1);
 
 
 4
 (2) distributing dilaudid (hydromorphone) in or about late September 1985 in violation of 21 U.S.C. Sec. 841(a)(2) and 18 U.S.C. Sec. 2;
 
 
 5
 (3) distributing dilaudid in or about October 1985 in violation of 21 U.S.C. Sec. 841(a)(2) and 18 U.S.C. Sec. 2;
 
 
 6
 (4) distributing dilaudid in or about November 1985 in violation of 21 U.S.C. Sec. 841(a)(2) and 18 U.S.C. Sec. 2;
 
 
 7
 (5) distributing demerol (meperidine) in or about February 22, 1986 in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2.
 
 
 8
 On November 24, 1986 the jury returned a verdict of guilty on all five counts. Johnson appeals claiming that the trial court committed three reversible errors.
 
 
 9
 Johnson first argues that the district court committed reversible error in not striking from the record Mr. Scheer's response during the direct examination of Louis Langham.
 
 BY MR. SCHEER:
 
 10
 Q. In the course of your examination of the records of Ecorse Pharmacy as supplemented by the records which you personally examined, did you do an audit on other compounds beyond demerol 100 and dilaudid?
 
 
 11
 A. Yes.
 
 
 12
 Q. Would that audit have been done at or near the same time as the audit for dilaudid and demerol 100?
 
 
 13
 A. Yes, it would have been.
 
 
 14
 Q. Do you have recollection at this time of what your specific findings were?
 
 
 15
 MR. BRACY: Objection.
 
 
 16
 THE COURT: Yes. Isn't this outside the scope of the Indictment.
 
 
 17
 MR. BRACY: That is precisely my objection.
 
 
 18
 MR. SCHEER: I would submit, Your Honor, that the findings with respect to other controlled substances are admissible by way of similar acts and also by way of establishing an intentional falsification or failure to maintain appropriate records for--
 
 
 19
 THE COURT: If it's necessary Mr. Schere [sic], for you on rebuttal to go into other acts, I will consider it at that time. But for the present, I don't believe that is necessary, and I will sustain the objection.
 
 
 20
 MR. BRACY: Your Honor, I would like to have his remarks stricken from the record about any other acts.
 
 
 21
 THE COURT: The answer may stand, go ahead.
 
 
 22
 MR. SCHEER: Thank you.
 
 
 23
 THE COURT: The remark may stand, rather.
 
 
 24
 At the conclusion of this exchange the government pursued a different line of inquiry.
 
 
 25
 The government argues that Mr. Scheer's exchange with the judge was not error and the original question was permissible under Federal Rule of Evidence 404(b) as going to prove intent and absence of mistake or accident.
 
 
 26
 Second, Johnson argues there was reversible error in allowing the prosecutor to make the following statements in his closing.
 
 
 27
 MR. SCHEER: Thank you, Your Honor. Sherri Walton, Laurie Ross, there's a dime a dozen. You can convict Sherri Ross'--or Sherri Walton, and Laurie Ross', ten at a time, march them in the ocean, you won't stop the drug problem.
 
 
 28
 MR. BRACY: That calls for prejudice.
 
 
 29
 THE COURT: This is argument, let's go.
 
 
 30
 MR. SCHEER: This defendant is a pharmacist. He is licensed to sell poisons, compounds that are dangerous to the public.
 
 
 31
 The government contends that the above statements were permissible in closing argument.
 
 
 32
 Finally, Johnson contends that there was insufficient evidence supporting conviction on Count 2 for selling dilaudid to co-defendant Sherri Walton in or about late September 1985. The district court denied defendant's motion for judgment of acquittal on this count finding that there was enough evidence from which a jury could find "beyond a reasonable doubt that there was such an occurrence." The government contends that Walton's testimony that she met with Johnson ten or more times between September and December 1985 combined with her three statements which follow provide an adequate basis for the jury's finding as to Count 2:
 
 
 33
 (1) Walton's statement that she received medications from Johnson "about two or three times";
 
 
 34
 (2) her statement that the sales had taken place "[f]rom around October to December in between the time. I don't remember the dates, but those were the months, give or take"; and
 
 
 35
 (3) Walton's "no" answer when asked, "other than the two sales of prescriptions and the three purchases of dilaudid pills, did you have any other drug related transactions with Mr. Johnson?"
 
 
 36
 The government also urges us to apply the concurrent sentence doctrine based upon United States v. Burkhart, 529 F.2d 168 (6th Cir.1976).
 
 
 37
 Upon review of the record as a whole and of the recent arguments of counsel, we are of the opinion that the evidence of the trial was insufficient to support Johnson's conviction under Count 2 of distributing dilaudid (hydromorphone) in or about September 1985. The only credible evidence showed that he distributed that drug in October and again in November. The government would have us assume matters not in evidence in asking us to rely on Walton's negative answer to the question posed above. The way the question is posed a negative answer cannot be considered an admission of a third purchase of dilaudid. The negative response was more likely a simple denial of any additional transactions. We are unable to find this response sufficient to warrant a reasonable jury in concluding that there was a third sale as charged in Count 2. The government's reliance upon the concurrent sentence doctrine and particularly upon this court's decision in Burkhart, supra, as a basis for overlooking this error is misplaced. While we would in any event have considerable reservations in applying this doctrine on direct review, the sentence on Count 2 in this case requires the imposition of a separate penalty and is therefore not concurrent. Because the separate penalty is required the concurrent sentence doctrine does not apply.
 
 
 38
 With respect to defendant's claim of prosecutorial misconduct, we are not persuaded that the blows struck by the prosecutor, while hard, required reversal in light of the testimony concerning defendant pharmacist's involvement in procuring large quantities of drugs for unlawful distribution. The evidence of other narcotics transactions was fully admissible as showing the nature of the conspiracy intent, and the absence of any mistake on defendant's part. Federal Rule of Evidence 404(b). See also United States v. Ellzey, 527 F.2d 1306 (6th Cir.1976).
 
 
 39
 Accordingly, the judgment of conviction and the sentence with respect to Count 2 of the indictment are REVERSED and VACATED and the cause REMANDED with directions to dismiss Count 2 with prejudice. In all other respects, the judgment of the district court is AFFIRMED.